OPINION
Appellant, George Schempf, and appellee, Sherry Schempf, were married on October 27, 1990. No children were born as issue of said marriage. On November 6, 1996, appellee filed a complaint for divorce.
A hearing before a magistrate was held on December 11, 1997. By decision filed January 16, 1998, the magistrate granted the divorce and allocated the parties' property.
Appellant filed objections to the magistrate's decision on January 30, 1998 and appellee filed cross-objections on February 3, 1998. A hearing was held on March 25, 1998. The trial court overruled the objections and approved and adopted the magistrate's decision. By judgment entry filed April 9, 1998, the trial court issued its final judgment entry of divorce.
Appellant filed a notice of appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 THE TRIAL COURT'S FAILURE TO INCLUDE APPELLEE'S BANK ACCOUNTS IN THE DISTRIBUTION OF MARITAL ASSETS WAS AN ABUSE OF DISCRETION, CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
II
 THE TRIAL COURT'S FAILURE TO INCLUDE THE FEDERAL QUARTERLY ESTIMATED TAX PAYMENTS IN THE DISTRIBUTION OF MARITAL ASSETS WAS AN ABUSE OF DISCRETION, CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
III
 THE TRIAL COURT'S DOUBLE COUNTING OF THE ALLIS-CHALMERS TRACTOR BY INCLUDING ITS VALUE IN THE KIKO AUCTION SALES PROCEEDS AND ITS FAIR MARKET VALUE AS SEPARATE AWARDS TO APPELLANT WAS AN ABUSE OF DISCRETION, CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
IV
 THE TRIAL COURT'S CLASSIFICATION OF THE FLATBED TRAILER AS MARITAL PROPERTY AND ITS DISTRIBUTION TO APPELLANT AS MARITAL PROPERTY WAS AN ABUSE OF DISCRETION, CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
V
 THE TRIAL COURT'S VALUATION OF THE MAYER LOAN WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
VI
 THE TRIAL COURT'S TREATMENT OF THE 1984 ODAY SAILBOAT AND TRAILER WAS AN ABUSE OF DISCRETION, CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
VII
 THE TRIAL COURT'S VALUATIONS OF THE 1988 BUICK AND THE 1983 GMC TRUCK WERE AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
VIII
 THE TRIAL COURT'S DIVISION OF THE CAPITAL GAINS TAX OBLIGATION WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
IX
 THE TRIAL COURT'S TREATMENT OF THE OIL WELLS WAS AN ABUSE OF DISCRETION, CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 STANDARD OF REVIEW
Because all nine assignments of error challenge the trial court's division of the parties' property, we will first discuss the standard of review applicable to all nine assignments.
R.C. 3105.171 governs equitable division of marital and separate property. Subsection (B) authorizes the trial court to determine "what constitutes marital property and what constitutes separate property." Subsection (C) mandates "the division of marital property shall be equal." If such a division would be inequitable, the court shall divide the marital property in an equitable manner. In making a division of marital property, the trial court shall consider all relevant factors, including those set forth in subsection (F):
 (F) In making a division of marital property and in determining whether to make the amount of any distributive award under this section, the court shall consider all of the following factors:
(1) The duration of the marriage;
(2) The assets and liabilities of the spouses;
 (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
(4) The liquidity of the property to be distributed;
 (5) The economic desirability of retaining intact an asset or an interest in an asset;
 (6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 (7) The cost of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 (9) Any relevant factor that the court expressly finds to be relevant and equitable.
Subsection (G) requires the trial court to "make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of `during the marriage.'"
In reviewing an order on property division, this court will not disturb the trial court's decision absent a showing of an abuse of discretion. Martin v. Martin (1985), 18 Ohio St.3d 292. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. In addition, a judgment supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. V. Foley Construction Co. (1978),54 Ohio St.2d 279.
Keeping the foregoing in mind, we will address the nine assignments of error.
 I
Appellant argues the trial court erred in failing to include appellee's bank accounts in the distribution of marital assets. We agree.
Appellee testified to having three bank accounts totaling $1,484.00. T. at 93. These accounts are not mentioned in the division of property. The result of this omission is that appellee retains the accounts without an equitable offset to appellant. In making an unequal distribution, the trial court is required to enter written findings of fact supporting its decision. See, Szerlip v. Szerlip (August 20, 1998), Knox App. No. 97CA31, unreported. Such was not done sub judice.
Upon review, we find the trial court erred in failing to include appellee's bank accounts in the distribution of martial assets.
Assignment of Error I is granted.
 II
Appellant argues the trial court erred in failing to include the federal quarterly estimated tax payments in the distribution of marital assets. We agree.
The parties had an account with the Internal Revenue Service in the amount of $5,773.60. When appellee filed her 1996 tax return, she applied $4,058.00 to her tax obligation (see, Plaintiff's Exhibit 29), leaving a balance of $1,715.60. This account was not mentioned in the division of property. As a result of this omission, appellee received $1,171.20 more than appellant did. Again, no written findings of fact were filed supporting the unequal distribution.
Upon review, we find the trial court erred in failing to include the tax account in the distribution of marital assets.
Assignment of Error II is granted.
 III
Appellant argues the trial court erred in double counting the Allis-Chalmers tractor. We agree.
Appellant testified the tractor was sold at auction and the money was placed in escrow. T. at 58-59. Appellee does not dispute appellant was awarded the value of the tractor plus the escrow account which contained the proceeds of the sale. See, Appellee's Brief at 11. As a result of this double counting, appellant was twice assessed credit for the value of the tractor ($1,350.00) creating an inequity.
Upon review, we find the trial court erred in doubling counting the tractor.
Assignment of Error III is granted.
 IV
Appellant claims the trial court erred in classifying the flatbed trailer as marital property and in distributing said property to appellant. We agree.
Appellant claims he purchased the trailer on November 11, 1988. Appellant argues because the trailer was purchased prior to the marriage, it should be deemed separate property and awarded to him without credit to appellee.
A review of the record establishes no testimony or documentation was given to the magistrate regarding the trailer's purchase date. Appellant argues he did not offer any such evidence because appellee had admitted in her November 6, 1996 financial statement that appellant owned the trailer prior to marriage. Appellee claimed the trailer was marital property via an amended financial statement prepared one day prior to hearing. See, Plaintiff's Exhibit 32.
During the objection hearing, appellant brought these facts to the trial court's attention, and produced a sales receipt for the trailer dated November 8, 1988 (see, Defendant's Exhibit AA at page 22). March 11, 1998 T. at 12.
Upon review, we find the trial court erred in finding the trailer to be marital property. The trailer was acquired prior to the marriage and as such is appellant's separate property.
Assignment of Error IV is granted.
 V
Appellant claims the trial court erred in valuing the Mayer Loan. We disagree.
It is undisputed the parties borrowed money from Floyd and Eva Mayer. What is in dispute is the amount. Appellant testified the amount was $15,000 and appellee testified the amount was $10,000. T. at 91, 131. Appellant testified the money was borrowed from four different life insurance policies owned by the Mayers as evidenced by Defendant's Exhibit M. T. at 132.
In Conclusion of Law No. 7, the trial court held as follows:
 Regarding the amount of the loan from the Mayer's the evidence is in dispute. Defendant testified that the amount borrowed was $15,000.00. Defendant's Exhibit M merely shows that the Mayers' borrowed $5,737.90 against their life insurance policy. Meanwhile the Magistrate finds that plaintiff was more credible than the Defendant and therefore finds the $10,000.00 amount contained in Plaintiff's Exhibit 32 is the more reliable figure.
Appellant argues this interpretation of Defendant's Exhibit M was erroneous because the magistrate only considered one page of the four page exhibit. The trial court heard this argument at the objection hearing and subsequently overruled it. March 11, 1998 T. at 8. Clearly the trial court found appellee's valuation of the loan to be more credible. Credibility is an issue that lies with the trier of fact. State v. Jamison (1990), 49 Ohio St.3d 182.
Upon review, we find the trial court did not err in valuing the Mayer loan.
Assignment of Error V is denied.
 VI
Appellant claims the trial court erred in its treatment of the 1984 Oday sailboat and its trailer. We agree in part.
Appellant argues the boat and trailer were his separate property and should have been awarded to him without any credit to appellee.
Appellant testified to making a $3,000 down payment on the boat prior to marriage. However, the boat was not titled to appellant until December 1, 1993, after the marriage had commenced (see, Defendant's Exhibit L). T. at 128-129. Appellant testified the trailer was titled to him on April 18, 1989, prior to the marriage (see, Defendant's Exhibit K). T. at 127-128.
Upon review, we find the trial court did not err in finding the boat to be marital property as it was acquired during the marriage. However, the trial court did err in finding the trailer to be marital property. The trailer was acquired prior to the marriage and as such is appellant's separate property.
Appellant also argues the trial court assessed incorrect valuations on the boat and trailer. Given the fact we deemed the trailer to be separate property, we will address this challenge as it pertains to the boat only.
The trial court awarded appellant the boat assessing a value of $15,000. Appellant argues said value is too high. Appellant testified the boat was purchased for $16,000 and currently the boat and trailer had a combined worth of less than $9,000. T. at 129-130. In a personal financial statement dated May 6, 1996, six months prior to the divorce complaint being filed, appellant listed the boat as having a fair market value of $15,000. See, Plaintiff's Exhibit 14. There was no other evidence before the trial court regarding the boat's value i.e., professional appraisal.
Upon review, we find the trial court did not err in assessing the boat's value at $15,000.
Assignment of Error VI is granted in part and denied in part.
 VII
Appellant claims the trial court erred in valuing his two motor vehicles. We agree.
The trial court awarded appellant his 1983 GMC truck and his 1988 Park Avenue assessing their value at $6,000 each. In Finding of Fact No. 30, the trial court found appellant had sold these vehicles for $1,500 (GMC truck) and $1,900 (Park Avenue) in contravention of a restraining order. In his May 6, 1996 personal financial statement, appellant valued each vehicle at $6,000. There was no other evidence before the trial court regarding the vehicles' value i.e., professional appraisal.
In Conclusion of Law No. 6, the trial court held "[d]efendant's opinion of the value of his two former vehicles as indicated on May 6, 1996 is more credible than the amount he realized from their sale since the transactions were in contravention of the restraining order." It appears the trial court adopted appellant's $6,000 figures because appellant sold the vehicles. If the trial court's intent was to "punish" appellant for violating the restraining order, then it should have addressed this issue separately.
Upon review, we find the trial court erred in valuing the vehicles at $6,000 each in light of the fact they were sold for $1,500 and $1,900.
Assignment of Error VII is granted.
 VIII
Appellant claims the trial court erred in dividing the capital gains tax obligation. We disagree.
Defendant's Exhibit P evidences the parties' capital gains tax obligation of $16,200 from the sale of the farm. This obligation was equally divided between the parties.
Appellant argues he should have been assessed full responsibility for this obligation because the Internal Revenue Service will come after him if appellee fails to report her half of the obligation on her tax return correctly.
We note appellant is basing his argument on facts that may never occur. If such a situation should arise, appellant can institute a contempt proceeding against appellee.
Upon review, we find the trial court did not err in dividing the capital gains tax obligation between the parties.
Assignment of Error VIII is denied.
 IX
Appellant claims the trial court erred in distributing the parties' oil wells. We disagree.
Appellant testified oil and gas wells were acquired during the marriage. T. at 29. Said wells were appraised at $19,000. See, Plaintiff's Exhibit 11. Appellant argues he should have been awarded the wells with no credit to appellee because the wells constitute his primary source of income.
We note appellant owns EBS Associates, an insurance agency, and has been engaged in the insurance business for approximately twelve years. T. at 9. While the wells may significantly contribute to appellant's income, they are not appellant's sole source of income. As the wells were acquired during the marriage, the trial court did not err in finding them to be marital property.
Assignment of Error IX is denied.
The judgment of the Court of Common Pleas of Stark County, Ohio, Family Court Division is hereby affirmed in part and reversed in part.
By Farmer, J., Wise, P.J. and Hoffman, J. concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, Family Court Division is affirmed in part, reversed in part and remanded to said court for further proceedings consistent with this opinion. Costs to appellant.